IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SAHEED DAVIS                                                                                    PETITIONER

VS.                                                              CIVIL ACTION NO. 3:15cv421-DPJ-FKB

THE STATE OF MISSISSIPPI
and COMMISSIONER
MARSHALL FISHER                                                                         RESPONDENTS

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Saheed Davis is a Mississippi state prisoner serving a life sentence for murder. He filed this action seeking federal habeas relief pursuant to 28 U.S.C. § 2254. Having considered the petition, response, rebuttal, and the state court record, the undersigned recommends that habeas relief be denied.

### II. FACTS AND PROCEDURAL HISTORY

On Christmas Day in 2008, members of the Wooten extended family gathered at the Wooten home in Jackson, Mississippi. Those present included Ronnie and Michelle Wooten; their daughters, Latoya Warner and Yolanda Wooten; Latoya's husband, Maurice Warner; and Yolanda's boyfriend, Saheed Davis. Maurice Warner and Latoya arrived last. When Maurice entered the living room, he sat down on the sofa between Davis and Ronnie and said something to Davis. No witnesses heard what he said.

It was no secret that Maurice and Davis had longstanding issues between them and did not get along. Ronnie Wooten testified that it was his observation that Maurice

would become angry anytime he was in Davis's presence. Tr. 100-01, [6-3] at 106-07.[1] Shortly after Maurice sat down and spoke to Davis, Davis and Latoya walked outside the house. Maurice followed, and an argument ensued. Yolanda testified that Davis asked Maurice what he had said to him inside the house and Maurice replied that he had called Davis "a punk ass, faggot ass bitch." Tr. 106, [6-3] at 112. When Davis asked him to repeat what he had said, Maurice said, "[N]*****, you heard me." *Id.* Maurice then struck Davis in the face.

By this time several other family members had come outside. Yolanda and Michelle attempted to separate Davis and Maurice. Maurice announced that he was leaving, although according to Michelle, Maurice and Davis were still trying to "get at each other" when Maurice said this. Tr. 88-89, [6-3] at 94-95. Davis and Maurice then went in opposite directions, with Davis running toward his vehicle, and Maurice heading toward his. Davis retrieved a gun from his vehicle and shot Maurice. A neighbor who witnessed the shooting testified that at the time he was shot, Maurice had made it to his vehicle and was about to open the door. Tr. 127, [6-3] at 133. Maurice fell to the ground, after which Davis continued to fire. Maurice sustained a total of 10 gunshot wounds – two to the neck and head, two to the right shoulder, and six to the torso. Tr. 172, [6-4] at 23. Maurice died of his injuries. Davis fled the scene on foot.

Davis was apprehended approximately two years later in Texas. He was indicted for murder and tried in the First Judicial District of Hinds County, Mississippi. At trial, Davis did not take the stand, and he put on no witnesses. His sole defense was that he

---

[1] Citations to the trial court record are given to the transcript or clerk's papers, as well as to the CM/ECF document number.

had shot Maurice in self-defense. The jury convicted Davis of murder, and the court sentenced him to serve a term of life imprisonment. The Mississippi Court of Appeals affirmed his conviction and sentence. *Davis v. State*, 130 So. 3d 1141 (Miss. Ct. App. 2013). Davis later filed in the state supreme court an application to proceed in the trial court with a motion for post-conviction relief (PCR). [6-1] at 19. By order entered June 9, 2015, the supreme court denied the application. [6-1] at 38.

Davis then filed his petition in this court, raising the following three grounds for relief:

1. The district attorney should have recused himself because of a conflict of interest.

2. Defense counsel rendered ineffective assistance in that he agreed not to introduce any of the victim's prior convictions and bad acts.

3. Defense counsel was ineffective in that he failed to request a heat-of-passion manslaughter instruction.

### III. ANALYSIS

**A. Ground One: Disqualification of Prosecutor**

At the time of the criminal proceedings against Davis, the Hinds County District Attorney was Robert Schuler Smith. Assistant District Attorneys Shaun Yurtkaran and Lora Hunter prosecuted the case at trial. Prior to his tenure as district attorney, Smith had represented Maurice in a criminal proceeding. Smith had also defended Maurice's brother in a criminal matter. In ground one, Davis argues that Smith's previous representation of the victim and Smith's relationship with the victim's family created a

conflict with his duty of fairness and impartiality.[2]  In support of this ground for relief, Davis has submitted an affidavit by one of his defense attorneys, Robert Powell. [1-2]. In the affidavit, Powell states that Davis had been willing to plead to manslaughter but that the district attorney's office had refused to enter into a plea agreement because of the opposition of Maurice's family.

Davis has presented no authority for the proposition that a prosecutor's personal or professional relationship with the victim's family can constitute a basis for federal habeas relief.  Assuming for the sake of argument that this ground states a cognizable habeas claim, it is nevertheless procedurally barred from review by this court.  Ground one was raised in Davis's PCR application and was determined to be procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1), Mississippi's contemporaneous objection rule.  Where a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is precluded unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A rule is presumed to be adequate where the state court expressly relies upon it.  *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

---

[2] The United States Supreme Court has described the unique position of a prosecutor as follows:  "The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

4

Davis makes four arguments as to why this court should nevertheless consider this claim. First, he argues that the procedural rule relied upon by the state court is not adequate to bar his claim because the rule has not been applied regularly to cases involving conflicts of interest. *See id.* (stating that the presumption of adequacy may be rebutted by a showing that the state procedural rule is not strictly or regularly followed). In support of this position, he cites a Mississippi case, *Kiker v. State*, 55 So. 3d 1060 (Miss. 2011), in which the Mississippi Supreme Court considered the merits of post-conviction claims of conflict of interest even though the claims had not been raised on direct appeal. He also cites to an unpublished order in a post-conviction case in which relief was granted, *Yarbrough v. State*, No. 2009-850 (Miss. S.Ct. filed June 16, 2010),[3] and states that in that case the movant was granted a hearing on his conflict-of-interest claim even though it had not been raised on direct appeal. The two cases cited by Davis concerned conflicts of interest of defense counsel, not the prosecution, and are therefore not directly applicable. More significant, however, is the fact that a showing that the state court disregarded a procedural rule in two cases is an insufficient basis for an exception to the procedural default rule. Rather, in order to establish that a rule relied upon by a state court was inadequate, a petitioner must show that the rule has not been "strictly or regularly applied *evenhandedly to the vast majority of similar claims.*" *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995) (emphasis in original) (citing *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989)). Two cases are an insufficient number to meet this requirement.

---

[3] Available at https://courts.ms.gov/newsite2/index.php?cn=69448#dispArea.

Davis next attempts to overstep the procedural bar by arguing that there was cause for his default. One method of establishing cause is to show that the "factual or legal basis for a claim was not reasonably available to counsel" at the time of the default. *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004). Davis asserts that the factual basis of the claim was not available to his attorney at trial because the district attorney had failed to disclose the alleged conflict. But the record is clear that defense counsel knew of the relationship prior to trial, as Mr. Powell discussed it with the trial judge and the prosecutor during the pretrial motion hearing. Tr. 9-10, [6-3] at 15-16. Thus, Davis cannot show that the factual basis for his claim was not available to his attorney at the time of the default.

In another attempt to establish cause, Davis points to the failure of his trial and appellate attorneys to raise the issue. An attorney's failure to raise a claim constitutes cause for default only if that failure rises to the level of ineffective assistance under *Strickland* and the allegation of ineffective assistance has itself been raised and exhausted in state court as a separate claim. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Because Davis has never raised and exhausted this allegation of attorney error as a separate ineffective assistance claim, he cannot rely upon his attorney's actions to establish cause.

Finally, Davis argues that this court should consider the merits of ground one because the failure of the district attorney to recuse himself and his office constitutes plain error. There is no "plain error" exception to the procedural default rule. To the extent that Davis is arguing that failure to consider the claim would result in a

6

miscarriage of justice, this argument fails also, as Davis has not made a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (holding that in order to establish the miscarriage of justice exception to the procedural default rule, a petitioner must show, by new evidence that was unavailable at trial, that he is actually innocent of the crime of conviction).

**B. Grounds Two and Three: Ineffective Assistance of Counsel**

Davis's claims of ineffective assistance were adjudicated on the merits by the Mississippi Supreme Court in Davis's post-conviction proceeding. They are therefore subject to the highly deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas relief in this case only if the state court's rejection of the claims involved "an unreasonable application of . . . clearly established Federal law . . . as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts" in light of the evidence presented to the state court. 28 U.S. C. § 2254(d). The Supreme Court has repeatedly emphasized that " an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be not only incorrect but also "objectively unreasonable." *Id.* at 409. Under this deferential standard, federal relief is precluded "so long as 'fairminded jurists could disagree' on the

7

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Analysis of ineffective assistance claims begins with the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that a petitioner show that his counsel's performance was deficient and that the deficiency resulted in prejudice to the defense. But when § 2254(d) applies, the ultimate question is not whether counsel was ineffective under *Strickland.* Rather, the reviewing court must ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Ground two of the petition concerns an agreement between defense counsel and the state. Both Davis and the victim had criminal histories. Prior to trial, the attorneys for both sides agreed that neither would introduce evidence of the criminal histories of Davis or Maurice. Davis argues that entering into the agreement constituted ineffective assistance on the part of his attorney, as Davis gave up an opportunity to use evidence of Maurice's criminal history to support his claim that Maurice was the first aggressor, as allowed by Miss. R. Evid. 404(a)(2)(B), whereas he gained nothing, since because Davis did not testify, the prosecutor had no opportunity to question him about his own criminal history.

The weakness in Davis's argument is that it assumes that defense counsel knew at the time he entered into the agreement that Davis would not testify. There is no affidavit or anything else in the record to support this assumption. Thus, there is a reasonable argument that defense counsel made a strategically valid decision

8

to enter into the agreement because he recognized the possibility that his client might testify, in which case the jury likely would learn of Davis's criminal history. The existence of this "reasonable argument" that counsel rendered sufficient performance is all that is required for the state court's rejection of this claim to pass muster under § 2254(d). *See Harrington*, 562 U.S. at 105.

The agreement challenged in ground one concerned only the criminal histories of Davis and the victim. However, in his discussion of this issue, Davis raises his attorney's failure to make a proffer of testimony by Yolanda Wooten concerning Maurice's past bad acts. In his cross-examination of Yolanda, defense counsel asked why Maurice did not want to be around Davis and whether she had ever heard Maurice threaten Davis. Tr. 109-111, [6-3] at 115-17. The judge sustained objections to this testimony, and defense counsel made no proffer. On appeal, Davis raised as error the trial court's exclusion of Yolanda's testimony. The court of appeals rejected the assignment of error because defense counsel had failed to proffer any details of the proposed testimony.

But just as defense counsel failed to proffer testimony to preserve the error for appeal, Davis similarly failed to submit with his PCR application any affidavits or other evidence establishing the content of the testimony he claims should have been proffered.[4] Thus, in considering his ineffective assistance claim, the state supreme court had no way of knowing what his trial attorney failed to proffer. Specifically, it had nothing before it establishing a reasonable probability of a

---

[4] Neither has he submitted any affidavits to this court. In any event, under § 2254(d), this court's review is limited to consideration of the state court's adjudication in light of the evidence presented to that court.

different result at trial had a proffer been made. For these reasons, the undersigned concludes that the state supreme court's rejection of this allegation of ineffective assistance was a reasonable application of *Strickland* in light of the evidence (or lack thereof) presented to that court.

Davis's remaining claim, set forth in ground three, concerns the jury instructions and the crime of heat-of-passion manslaughter. Under Mississippi law, heat-of-passion manslaughter is defined as a homicide committed in a state of violent or uncontrollable rage suddenly provoked by a blow or some other provocation that would naturally produce such a state in ordinarily-constituted persons. *Graham v. State*, 582 So. 2d 1014, 1017-18 (Miss. 1991). Heat of passion will reduce a homicide from murder to manslaughter. *Id.* In the present case, defense counsel did not argue that Davis's killing of Maurice was done in the heat of passion. Rather, the defense's strategy was to try to persuade the jury that the killing of Maurice was justified because Davis believed it was necessary for his own protection. Defense counsel argued that the killing was in self-defense and submitted an instruction on the requirements of justifiable homicide on this basis. Defense counsel did not submit an instruction on heat-of-passion manslaughter.

Davis contends that this omission constituted ineffective assistance of counsel. But heat-of-passion manslaughter was specifically addressed in an instruction submitted by the state and given by the court. Accordingly, the question of whether or not the state court's rejection of this claim of ineffective assistance was objectively reasonable requires a consideration of that instruction in the

10

context of the substantive instructions as a whole.

Instruction S-1 informed the jury of the charge against Davis and set forth the basic elements of murder, including deliberate design murder and depraved heart murder.[5] The deliberation requirement for deliberate design murder was explained in instruction S-2.[6] Instruction S-3 defined deliberate design murder and depraved heart murder.[7] Instruction D-2 set out the requirements for justifiable

---

[5] The complete instruction read as follows:

> The Defendant, Saheed Davis, has been charged in the indictment with the offense of murder.  The Court instructs the jury that if you find from the evidence that
>
> 1. The Defendant, Saheed Davis;
>
> 2. On or about December 25, 2008;
>
> 3. In the First Judicial District of Hinds County, Mississippi;
>
> 4. Did purposely, knowingly and feloniously
>
> 5. Kill Maurice Warner,
>
> 6. with deliberate design or while in the commission of an act eminently dangerous evincing a depraved heard, without the authority of law;
>
> then you shall find the defendant, Saheed Davis, guilty of murder.
>
> If the State has failed to prove any one or more of the elements beyond a reasonable doubt, then you shall find the defendant not guilty of murder.

C.P. 21, [6-2] at 24.

[6] This instruction stated as follows:

> The court instructs the jury that "deliberate design" cannot be formed at the very moment of the fatal act, however, the deliberate design need not exist in the mind of the Defendant for any definite time, not for days, hours or even minutes, but if there is deliberate design, and it exists in the mind of the Defendant but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of Murder.

C.P. 22, [6-2] at 25.

[7] Instruction S-3 read as follows:

11

homicide on the grounds of self-defense, C.P. 31, [6-2] at 34, and S-6 informed the jury that self-defense is not available where the defendant is the aggressor, C.P. 27, [6-2] at 30. Instruction S-8 addressed the possibility of conviction of the lesser crime of manslaughter, specifically, the crime of "imperfect self-defense" manslaughter. The first paragraph of Instruction S-8 directed the jury to consider the crime of manslaughter if it did not convict Davis of murder. The second paragraph set out the elements of imperfect self-defense manslaughter. In the third and final paragraph, the jury was instructed that if it found that the Davis had killed Maurice under circumstances amounting to imperfect self-defense, it could "find the Defendant guilty of the lesser included offense of manslaughter."[8]

---

> The court instructs the jury that murder is the killing of a human being, with malice aforethought, not in necessary self defense, and without authority of law, by any means or by any manner, when done with deliberate design to effect the death of the person killed or when done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of any particular individual.

C.P. 23, [6-2] at 26.

[8]Instruction S-8 read as follows:

> The Court instructs the Jury that if you unanimously find that the State has failed to prove all the elements of the crime of Murder, you may then proceed in your deliberations to consider the lesser charge of Manslaughter. However, it is your duty to accept the law given to you by the Court; and if the facts and the law warrant a conviction of the crime of Murder, then it is your duty to make such a finding, and not be influenced by your power to find a lesser offense. This provision is not designed to relieve your [sic] from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.
>
> The Court instructs the Jury that if a person kills another under the actual bona fide, belief that such a killing is necessary in order to protect himself from great bodily harm or death, but that such belief is not reasonable under the circumstances, then there is no malice aforethought and the killing is not murder, but at most is the crime of manslaughter.
>
> Therefore, if you find from the evidence in this case that on December 25, 2008, the Defendant, Saheed Davis, did shoot and take the life of Maurice Warner, acting on his actual and bona fide belief that such was necessary to protect himself from great bodily

Instruction S-7 defined "heat of passion" under Mississippi law and informed the jury that this state of mind would "reduce a homicide from the grade of murder to that of manslaughter."[9] The form of the verdict, S-5A, stated in relevant part that if they found that the defendant was not guilty of murder, the jurors were to continue their deliberations to consider manslaughter. C.P. 25, [6-2] at 28.

On direct appeal, Davis assigned as error the trial court's failure to give a heat-of-passion instruction. The Court of Appeals, considering the jury instructions as a whole, found that they adequately set forth the law concerning heat-of-passion manslaughter. The undersigned agrees that the instructions that were given set out the requirements of heat-of-passion manslaughter and instructed the jury on the circumstances that would constitute "heat of passion." Furthermore, in the form

---

    harm or death at the hands of Maurice Warner, but that such belief by the Defendant was not a reasonable belief under the circumstance, then you may find the Defendant guilty of the lesser included offense of manslaughter.

C.P. 29-30, [6-2] at 32-33.

[9] The complete form of Instruction S-7 was as follows:

    The court instructs the jury that "heat of passion" is defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

    This passion should be an emotion brought about by some insult, provocation, or injury, which would produce in the minds of ordinary men "the highest degree of exasperation." We have stated that words alone and disagreements among people are not enough to invoke the passion required for this defense. Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.

C.P. 28, [6-2] at 31.

13

of the verdict, the jury was directed to consider manslaughter if it found that Davis was not guilty of murder. Davis has not identified any necessary information or direction on heat-of-passion manslaughter that should have been given but was not. Neither has he argued that there was any likelihood of juror confusion on this issue. Thus, there is a reasonable argument that Davis has not established prejudice, within the meaning of Strickland, resulting from his attorney's failure to submit a heat-of-passion instruction. For this reason, the state court's rejection of ground three must stand under § 2254(d).

## IV. CONCLUSION

Ground one is procedurally barred. The state court's adjudications of grounds two and three were not contrary to, nor did they involved an unreasonable application of, clearly established Supreme Court law, nor were they based upon an unreasonable determination of the facts. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 13th day of June, 2018.

s/ F. Keith Ball<br>
United States Magistrate Judge